# No. 20-35847

---

**In the United States Court of Appeals for the Ninth Circuit**

_____

**Joe Lamm**, **Ravalli County Republican Central Committee**, **Jeff Wagner**, **Sylvia Wagner**, **Fiona Nave**, and **Brent Nave**, *Plaintiffs-Appellants*

*v.*

**Stephen Bullock**, in his official capacity as Governor of Montana, and **Corey Stapleton**, in his official capacity as Secretary of State of Montana, *Defendants-Appellees*

_____

On Appeal from the U.S. District Court for the District of Montana,
Case No 6:20-cv-00067-DLC, Honorable Dana L. Christensen, District Judge

_____

# Reply in Support of Emergency Motion of Appellants Lamm et al. for an Injunction Pending Appeal Under Circuit Rule 27-3(b) Relief Requested by October 5, 2020

_____

|  |  |
|---|---|
|  | James Bopp, Jr., *Lead Counsel* |
|  | jboppjr@aol.com |
|  | Richard E. Coleson |
| Emily Jones | rcoleson@bopplaw.com |
| emily@joneslawmt.com | Courtney Turner Milbank |
| JONES LAW FIRM | cmilbank@bopplaw.com |
| 2101 Broadwater Ave. | THE BOPP LAW FIRM, PC |
| P.O. Box 22537 | 1 South Sixth St. |
| Billings, MT 59104 | Terre Haute, IN 47807–3510 |
| Telephone: 406/384-7990 | Telephone: (812) 232–2434 |
| *Counsel for Plaintiffs-Appellants* | *Lead Counsel for Plaintiffs-Appellants* |

**Reply in Support of Emergency Motion for an Injunction Pending Appeal**

Appellant Voters reply to the Governor's Response[1] to their Emergency Motion for an Injunction Pending Appeal.

**I. The Governor Erroneously Seeks to Preclude Voters from Protecting their Constitutional Rights by Benefitting from the "Chaos" He and the Secretary of State Have Caused by a Substantial "Election Eve" Change in Voting Procedures.**

Voters challenge the Montana Governor's Directive allowing Montana counties to choose "mail ballots" for the November election and the Secretary's September 9, 2020, initial approval of the counties' proposed mail-ballot plans, which displace the legislature's *ban* on mail ballots for "regularly scheduled federal ... election[s]," MCA 13-19-104(3)(a). The counties' mail balloting plans were subject to amendment up until September 29, 2020, which also must be approved by the Secretary, so that the counties' mail balloting plans were not final until September 29th, if no amendments were proposed, or thereafter if the Secretary had to approve any proposed amendments. MCA 13-19-205(3).

In denying relief, the District Court relied heavily, as does the Governor in his Response, on the United States Supreme Court's admonition "against changing the rules of the game on the eve of an election," ECF No. 73 at 40 (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020)), because

---

[1] The Appellee Montana Secretary of State did not file a Response. Voters will reply to only arguments not addressed in their Emergency Motion.

1

of the resulting "voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase[,]" *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006).

Of course, it is not this lawsuit that has resulted in a "chang[e in] the rules of the game on the eve of an election," but the finalization of the counties' mail balloting plans, as initially approved by the Secretary on September 9th, under the Governor's Directive, but not final until September 29th, at the earliest, when amendments could be proposed and approved. *This was just four days ago*. And under these now finalized mail balloting plans, the counties plan to mail ballots to all registered voters on October 9th. It is this "eve of an election" radical change in voting procedures by state officials that has triggered the chaos predicted by the Supreme Court.

The Governor seeks to benefit from the resulting chaos triggered by his and other state official's "eve of an election" change in voting procedures, by arguing that, under the balancing of the equities and the public interest, the Voters are precluded from seeking relief from the federal courts to protect the violations of their constitutional right under the United States Constitution. Governor's Response, Doc. 6-1, at 3-15.

First, the Governor argues that "any 'emergency' in this case is entirely of the Appellants' creation," *id*. at 3, by failing to file suit earlier. Of course, the Voters

2

did not have standing to sue unless and until they suffered a personal injury. *Sierra Club v. Morton*, 405 U.S. 727, 734-735 (1972) ("The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("A 'concrete' injury must be 'de facto'; that is, it must actually exist."). Voters herein filed suit on September 9th, the very day that initial approval by the Secretary was given of the mail ballot plans and Voters could argue that they had suffered an injury at this point. Up until September 9th, however, no legally effective change in voting procedures had been even initially adopted and the Voters had suffered no personal injury.

Furthermore, up until on or after September 29th, it could also be said that any personal injuries the mail balloting plans would cause Voters was "conjectural or hypothetical," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical[.]"'"(internal citations omitted)), since amendments to the plans could be submitted until September 29th and given the Secretary's approval. Thus, no legally effective change in voting procedures had been finally adopted until on or after September 29th and the Voters may have not suffered any cognizable injury until then.

3

Second, an injunction by the Court would restore Montana's "long-standing" voting procedures adopted by the Legislature, and unlawfully changed at the "eve of an election" by state officials, preventing irreparable harm to the State of Montana and mitigating the chaos that the Governor and Secretary have caused.[2]

Instructive is the Eleventh Circuit's decision on October 2nd in *The New Georgia Project v. Raffensperger*, No. 20-13360-D, slip op. (Oct. 2, 2020). In *Raffensperger*, the Eleventh Circuit granted a stay of a District Court injunction of a "long-standing Georgia ballot deadline," which put the "decades-old" election law back into force. *Id*. at 2, 10. This prevented Georgia from suffering irreparable harm that results when a State cannot "conduct[] this year's elections pursuant to a statute enacted by the Legislature, *id*. at 9 (citation omitted), since U.S. Const. art 1, sec 4, cl. 1, gives the Legislature "state control over the election process for state offices," which "is necessarily structured to maintain the integrity of the democratic system." *Raffensperger*, slip. op. at 2 (citation omitted).

Furthermore, the Eleven Circuit found that staying the "alter[ation] of election

---

[2] The Governor's argument that "an injunction would cast doubt on the validity of all votes cast between October 2 (the date when early voting begins in opt-in counties) and October 5 (the date it begins otherwise)" is a red herring. Governor's Response, Doc. 6-1, at 14. The injunction that Voters seek is to enjoin "the Secretary from approving" the county's mail balloting plans and to require "the Secretary to rescind approvals" already approved. Emergency Motion, Doc. 3-1, at vi. This means that mail ballots would not be mailed on October 9th. Early voting is not affected.

rules on the eve of an election" will "prevent voter confusion" and serve other "important" interest–including "conducting an efficient election, maintaining order, quickly certifying election results, and preventing voter fraud." As a result, a "stay preserves the status quo and promotes confidence in our electoral system–assuring voters that all will play by the same, legislatively enacted rules." *Id*. at 10.

The same here. As explained, in-person voting and no-excuse absentee balloting can be accomplished safely under the Governor's Phase 2 requirements, Emergency Motion, Doc. 3-1, at 1-2, and the Governor's mail balloting scheme poses a greater fraud and disenfranchisement risk, *id*. at 2-5, resulting in irreparable harm of Voters, *id*. at 5-6.

**II. The District Court Correctly Held that Voters Have Standing**.

The district court correctly recognized Voters' standing for all claims. ECF No. 73 at 19 n.4. Voters meet the requirements of *Lujan*, 504 U.S. at 560-61, as they suffer personal harm, traceable to the Governor's Directive and its implementation, redressable by requested relief. Their equal-protection claim provides standing under the analysis of *Bush v. Gore*, 531 U.S. 98, 107 (2000) (and cited cases), for voters in non-mail-ballot counties disadvantaged by the increased voting power of voters in mail-ballot counties. Emergency Motion, Doc. 3-1, at 6-10.

Arguing with the District Court's finding that the Voters are not asserting a "generalized grievance," the Governor claims that Voters are "merely

5

complain[ing] that someone, somewhere in Montana *might* vote illegally–a classic generalized grievance." Governor's Response, Doc. 6-1, at 21 (emphasis in original).[3] But classic vote dilution occurs when there is "ballot-box stuffing," *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing."), which is a particularized injury to every legitimate voter, as the value of their votes are diminished.

Second the Governor argues that they "lack evidence of voter fraud, resulting in vote dilution." Governor's Response, Doc. 6-1, at 21. But Voters have already responded to this, that, as a matter of law, mailed ballots pose a fraud risk under Supreme Court precedent, Emergency Motion, Doc. 3-1, at 2-3, and that there is sufficient evidence in elections elsewhere and in Montana that mail balloting poses real and substantial risks of voter fraud and direct disenfranchisement of voters, *id.* at 3-6. In any event, the balancing of voter access with election-integrity issue is left to the Legislature under the U.S. Constitution, *id.* at 13-15, and the Legislature need not wait until an evil besets their state to prophylactically prevent it, *see, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 27-28 (1976), which Montana did by banning mail balloting schemes in general elections.

---

[3] The Governor does not address the additional grounds for Voter standing, that they suffer direct disenfranchisement and are denied equal protection.

Ironically, the mail balloting scheme permitted by the Governor's Directive, and approved by the Secretary, eliminates the key anti-fraud feature of Montana's absentee voting procedure—the absentee ballot application—which is a contemporaneous prior request by the voter to receive the mail ballot. MCA 13-13-211. This application ensures that the person is alive and still eligible to vote, requires the voter to provide their current address, and provides an audit trail and a signature match. The Governor's Directive eliminates this vital anti-fraud protection and he then demands that Voters provide evidence of the very voter fraud which the application provision prevented in the first place. Of course, due in large part by *the very prophylaxis the Governor has eliminated*, there is little evidence of *past* fraud from mail ballots, but *removing* that key prophylaxis assures that those harms *will occur* according to the Legislature's authoritative and expert balancing.

### III. The Directive violates the Elections Clause.

The Directive violates Voters' right to have, and vote in, an election under the Elections Clause: "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof. . . ." U.S. Const. art. I, § 4, cl. 1.[4] As federal candidates are on the November ballot, this controls. Yet, though the legislature *barred* mail balloting, MCA

---

[4] The "Manner" encompasses "supervision of voting, protection of voters, prevention of fraud and corrupt practices." *Cook v. Gralike*, 531 U.S. 510, 523-24 (2001) (citation omitted).

7

13-19-104(3)(a), the Governor's Directive *allows* them.

In upholding the Governor's Directive, the District Court held that the Governor had the authority to rewrite Montana's voting procedures under MCA 10-3-104(2)(a), which allows the Governor to "suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business . . . [in an] emergency." The District Court, however, failed to adequately consider whether this statute comports with the Montana Constitution,[5] or for that matter, the U.S. Constitution.

First, the Governor is not the Legislature and all legislative power is conferred on the Montana Legislature. Mont. Const. art. III, § 1 provides:

> Section 1 . SEPARATION OF POWERS. The power of the government of this state is divided into three distinct branches-legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

This provision of the Montana Constitution clearly confers on the Legislature lawmaking power and expressly prohibits any other person from exercising the power conferred on the Legislature, unless the Montana Constitution "expressly" permits. Thus, if Governor's "suspension" authority cannot extend, under the Montana

---

[5] A federal court has the power to "ascertain what" state law requires, *Evertt v. Schromm*, 772 F.2d 1114, 1119 (3rd Cir. 1985), and to decide what constitutes state lawmaking power under the Elections Clause. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 807 (2015).

Constitution, to making law, by suspension or otherwise.

Furthermore, the Montana Constitution also "expressly" deals with absentee voting and administration of elections. Mont. Const. art. IV, § 3 provides:

> Section 3. ELECTIONS. The legislature shall provide by law the requirements for residence, registration, absentee voting, and administration of elections. It may provide for a system of poll booth registration, and shall insure the purity of elections and guard against abuses of the electoral process.

Thus, the Montana Constitution not only prohibits any other person from exercising the power of the Legislature to make laws, it "expressly" requires the Legislature to make laws regarding absentee ballots and the administration of elections.

Both of these provisions mandate that only the Legislature may make laws governing elections. They both have the effect of prohibiting the Governor from doing so, by "suspending" laws or otherwise.

Even if this is permissible under Montana law, the "suspension" authority is a delegation of the Legislature's lawmaking authority, which is contrary to the mandate of the U.S. Constitution's Elections Clause, which mandates that the "times, places and manner" of elections shall be "prescribed in each state by the Legislature thereof." U.S. Const. art I, sec 4, cl. 1. Thus, the U. S. Supreme Court, in *Ariz. State Legislature*, 576 U.S. 787, upheld an Arizona initiative, which amended the Arizona Constitution to establish an independent redistricting commission, from an Elections Clause challenge because, for Elections Clause purposes, "the Legisla-

9

ture" is not confined to the elected representatives, but, rather, the term encompasses all legislative authority conferred by the State Constitution, including initiatives adopted by the people themselves.

Of course here, the Montana Constitution confers the authority to administer elections to the Legislature, not the Governor. And no court has ever held that a Legislature may, consistent with the Elections Clause, delegate their exclusive law making power to a Governor, contrary to the District Court's opinion. ECF No. 73 at 29-32. If that were so, the Montana Constitution and the Elections Clause would have no meaning.

## Conclusion

The Court should grant this Motion.

| | |
|---|---|
| October 4, 2020 | Respectfully submitted, |
| | James Bopp, Jr. (IN #2838-84)<br>  *Lead Counsel*<br>  jboppjr@aol.com |
| Emily Jones<br>  emily@joneslawmt.com<br>JONES LAW FIRM<br>2101 Broadwater Ave.<br>P.O. Box 22537<br>Billings, MT 59104<br>Telephone: 406/384-7990<br>*Counsel for Plaintiffs-Appellants* | Richard E. Coleson (IN #11527-70)<br>  rcoleson@bopplaw.com<br><u>/s/ Courtney Turner Milbank</u><br>Courtney Turner Milbank (IN #32178-29)<br>  cmilbank@bopplaw.com<br>True the Vote, Inc.<br>  Voters' Rights Initiative<br>THE BOPP LAW FIRM, PC<br>1 South Sixth St.<br>Terre Haute, IN 47807-3510<br>Telephone: 812/232-2434<br>*Lead Counsel for Plaintiffs-Appellants* |

## Certificate of Compliance

I hereby certify that the foregoing Reply complies with the requirements of Federal Rule of Appellate Procedure 27(d) and Ninth Circuit Rules 27-1(1)(d) and 32-3. The Motion was prepared in 14-point proportional font, and other than portions excluded by rule contains 2,323 of the 2,600 words permitted under Fed. R. App. P. 27(d)(2)(C), as counted by WordPerfect X7.

October 4, 2020                                    /s/ Courtney Turner Milbank
                                                              Courtney Turner Milbank (IN #32178-29)
                                                                 cmilbank@bopplaw.com

## Certificate of Service

I certify that counsel of record have been served by this Court's ECF service.

<u>/s/ Courtney Turner Milbank</u>
Courtney Turner Milbank (IN #32178-29)
cmilbank@bopplaw.com